Doe
v.
Brown.

---

Doe, on the Demise of Martin, *v.* Brown and Others.

The circumstance that a party or his attorney was present at the taking of a deposition and cross-examined the witness, making no objections, is a waiver of any objection to the notice of taking the deposition.

After a guardian *ad litem* has been appointed for infant defendants, they will be regarded as properly in Court; and if an attorney afterwards appear and plead for them, it will be presumed that he was authorized to do so.

After the appointment of such guardian, the relation of the attorney of the infants to them is the same that it would have been had they been adults.

A deposition was objected to on the ground that the witness was interested. *Held,* that the facts relied on, and which are stated in the opinion of the Court, did not sustain the objection.

ERROR to the *Clinton* Circuit Court. The verdict and Monday, judgment were for the defendants. July 12.

Smith, J.—This was an action of ejectment brought in the *Clinton* Circuit Court, in the name of *John Doe,* on the demise of *Robert Martin,* against *Elizabeth Brown* and several other defendants, some of whom were minors.

The principal error complained of is the suppression of the deposition of *James Sigerson* which had been taken on behalf of the plaintiff. A bill of exceptions shows us that the Court sustained a motion of the defendants' counsel to suppress this deposition on two grounds: 1st, That there had been no sufficient service of notice on the infant defendants in the cause; and, 2d, That the deposition disclosed the fact that the deponent was interested in the event of the suit.

It appears that the deposition was taken at *Lafayette,* in *Tippecanoe* county, on the 5th of *February,* 1845, and that notice had been served on *Mace* and *Crane,* attorneys at law, at their office in the same town, at twenty minutes past eleven o'clock, A. M., on the day previous. At a term of the Court previous to that at which the deposition was suppressed, and before it was taken, *Robert Brown* had

been appointed guardian *ad litem* for the infant defendants, and the common consent rule and plea of not guilty had been filed for them by *Mace* and *Crane* as their attorneys. At the taking of the deposition, these attorneys appeared and cross-examined the witness for the defendants, making no objections, and the certificate of the magistrate before whom it was taken states that both parties were present by their attorneys. These are all the material facts shown by the record so far as regards the question of notice.

We are referred to a provision of the Revised Statutes of 1843, p. 721, that no such notice "shall be valid unless the adverse party be allowed, between the service of the notice and the taking of the deposition, a reasonable time for him to travel from his usual place of abode to the place of taking such deposition, by the ordinary route of travel, exclusive of the day on which such notice was served, the day for taking such deposition, and the intervening Sundays." The record shows that the suit of ejectment was pending in *Clinton* county, but it does not state the place of the defendants' abode, and the attendance of the defendants or their attorneys was a waiver of any objections for the reason that sufficient notice had not been given, they making none at the time the deposition was taken.

But it is contended, that there is no sufficient proof that *Mace* and *Crane* were legally authorized to appear for the infant defendants, and that infants cannot have an attorney of record, or one that will be regarded as such from the record of the case without any other evidence of such fact. These positions, we think, are untenable. After a guardian *ad litem* has been appointed for infant defendants, they will be regarded as properly in Court; and if an attorney appears and pleads in their name, it will be presumed that he is properly authorized to do so. We cannot perceive that the fact of some of these defendants being infants can make any essential difference. After the appointment of a guardian by the Court, an attorney bears the same relation to an infant client as in the case of an adult. 11 Wend. 164.

The next question to be considered is, whether the facts stated in the deposition show that the witness was disqualified on the score of interest? The object of his testimony was to

prove that a sale by the sheriff of *Clinton* county of the land in controversy, under which sale the defendants claimed title, was fraudulent. *Sigerson*, the witness, states that the land was sold under an execution which issued upon a judgment in favour of one *Vigers*, and against *Martin*, the lessor of the plaintiff, and himself. The judgment was rendered in the *Marion* Circuit Court and was for about 700 dollars. An execution had been issued to *Hendricks* county, where the witness resided, and had been levied upon his property. The witness showed *Vigers* a settlement between *Martin* and himself, by which it appeared that *Martin* was to pay the debt, and at the same time he told *Vigers* he knew of property in *Clinton* county belonging to *Martin*, out of which the money could be made. Upon this, *Vigers* permitted the witness to have the execution then out returned, and another issued to the sheriff of *Clinton* county, and levied on the premises in controversy, *Vigers* agreeing to bid the property off at the sale at such price as the witness should name, and the latter giving *Vigers* security that he should lose nothing by the bargain; the object of the witness being to prevent the property from being sold at a sacrifice, and save himself from having any part of the debt to pay. *Vigers* accordingly sent an agent, *Todd*, to attend the sale. The sheriff refused to take any bid from *Todd*, and the witness himself bid off all the property levied upon except one or two town lots, at the price of 500 dollars. After the land was struck off to him the sheriff demanded the purchase-money, and the witness told him that *Todd* was ready to receipt for it. The sheriff said that *Todd* could not receipt, and that nothing would do but the money, which the witness could not or would not pay, and after some quarrelling the sheriff re-offered the land for sale and sold it a second time. There are some other statements tending to show that the sheriff acted improperly at the sale, but the above is all that relates to the alleged interest of the witness. He does not state by whom the land was purchased at the second sale, or at what price it was bid off. Neither does it appear whether the judgment-debt was paid by the proceeds of the sale or not, or whether it has been since paid or remains unsatisfied.

These facts show that the witness was interested in having

May Term,
1847.

the property sold for a sufficient amount to pay the judgment-debt, but it does not appear from them alone that he is in any way interested in the event of this suit. If the judgment remained unsatisfied there might, certainly, exist a state of facts under which it would be the interest of the witness to have the second sale set aside, in order to have the debt paid by the proceeds of a better sale, but such a state of facts should appear affirmatively to disqualify him from giving testimony as to the validity of the first sale. It is said that if the second sale is set aside he may claim the land himself as a purchaser at the first sale, but his own statement (and this is all we have to look to, as his interest is alleged' to appear from the deposition itself) shows that he did not perfect his bid and that he is not in a position to claim as such purchaser.

We do not know what effect this deposition would have had if it had been read upon the trial, but it appears to have been relevant to the matters in issue, and we think the Circuit Court erred in suppressing it upon the grounds stated in the record.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*H. S. Lane, S. C. Willson,* and *Z. Baird,* for the plaintiff.

*D. Mace, A. M. Crane,* and *R. C. Gregory,* for the defendants.