Caton, J. The first count of this declaration is upon a bond executed by Bledsoe and his sureties, conditioned that he should faithfully discharge his duties as school commissioner of said county, and should, at the expiration of his term of office, pay over to his successor, the funds in his hands. The count, after setting forth the bond and condition in the usual way, proceeds to aver, that the defendant Bledsoe, as such school commissioner, on the first of February, 1839, had in his hands the sum of $1,232, which he loaned to Eakin, to secure which he took a bond, together with a mortgage upon certain premises described. And it is averred that thé title to said real estate was not clear, indisputable and unencumbered, and that it was not in value of treble the amount of the sum loaned. The count then shows that the mortgage had been foreclosed and the mortgaged property sold for the sum of $533 33, which is all that has been made of said debt, “ and so the said plaintiff says that the said Moses 0. Bledsoe, as such school commissioner and agent for, &c., as aforesaid, hath in the premises forfeited and broken the condition of his said bond, contrary to the form offhe^tatue, &c.” A demurrer was sustained to this count^iWSE^T^^gd. for error. a The averment that the title to the mortgaged i^renn not clear, indisputable and unencumbered, JP cient breach of the bond to render the defencEnts liable a covenant, or the condition of a bond may%e$¡ilJÍ$irT5y omission or commission of a single act, the assigned in the words of the covenant or condition, Ifut where the condition may be broken in various ways, the party in his assignment must specify the particular mode in which the condition has been broken. Here the title may have been encumbered in various ways, or it may have been disputable from various causes, and it was the right of the defendants to know how the land was alleged to be encumbered. The People v. Brush, 6 Wend., 454. Here it is not even shown, whether the complaint is that the mortgagor’s title was defective or whether it was encumbered, and the defendants are not advised what specific complaint or defect they are called upon to meet. The other breach complained of, however, is of a different character. The averment there is, that the real estate taken in security, was not of treble the value of the amount of money loaned. The condition of the bond is, that the commissioner should faithfully perform all the duties which were or should be required of him by law. As the law then stood he was required to secure the loan upon real estate, in value, treble the amount of the loan. This duty could be violated in but one way, and hence it was sufficient to assign the breach, by negativing the words of the statute, which by adoption constituted a part of the condition of the bond. In the case of the People v. Haines, 5 Gilman, 528, which was a suit upon a school commissioner’s bond, the complaint was that the mortgagor had no title to the mortgaged premises, and it was decided that: “If the commissioner acts in good faith, and with due caution and circumspection, then he does his duty and incurs no responsibility; but if he loans the money either in bad faith, or without such care and circumspection, then he diverts and misapplies it, and is responsible at once for all the money thus misapplied.” The principle of this decision is applicable to the case before us. If the commissioner had reason to believe, and did believe that the mortgaged premises were of treble the value of the sum loaned, then he has discharged his duty with fidelity, and is not responsible for the consequences. No standard is fixed, either by law or by public estimation, by which we can determine, with certainty, the value of real estate. It must necessarily be estimated by the judgments of men, and hence, at best, it is but matter of opinion, which we know must vary widely in the estimates of different individuals, and much more so here than in older States and in large cities. There, the rents and profits, to a very considerable extent, afford a standard of value, while here, the prospects of the future often, and indeed generally, have a much greater influence than the present income of the estate in determining its value, With us then, the value of real estate is peculiarly matter of opinion, and it is incapable of being determined with absolute certainty, and the Legislature never could have designed to require of the commissioner, that he should determine at his peril, and with absolute certainty, that which was incapable of demonstration. Doubtless, it was in view of this, and of the fallibility of human judgment, which induced them to require, what would be'exorbitant security if the thing mortgaged were of a fixed and unalterable value. The requirement of the law is answered, if the commissioner has availed himself of the best means of forming a correct opinion of the value of the property mortgaged, and believes that it is of the required value. To require more than this would make the law oppressive, and would render it extremely hazardous for any one to accept the office of shool commissioner. If this is all the law demands of the commissioner to fulfil its requirements, then, in order to prove the breach which negatives the terms of the law, the plaintiff must show, to the satisfaction of the jury, either that the commissioner did not believe that the land was of the requisite value, or that he was guilty of a want of proper care in not ascertaining that it. was of inferior value. The objection that it should have been averred that the commissioner knew that the land was of less value than required by the statute, or that he might, with proper care, have known that fact, we think was not well considered. The case in 5 Gil-man, above referred to is directly in point against this objection. In that case these was no want of fidelity or vigilance charged in the declaration, and yet it was held that one of these must have been wanting to make the commissioner liable. We are of opinion that the demurrer to this first count should have been overruled. Of the many questions which were presented relating to the depositions, but one or two require particular notice. Of the objections to immaterial testimony, it may be remarked, that most of the issues-joined, were entirely immaterial, and while the greater part of the depositions were entirely foreign to the real merits of the action, yet they were more or less applicable to these issues, and if parties will allow immaterial issues to be formed, they ought not to complain that they have been tried. The appearance of the defendants and their cross examination of the witnesses was a waiver of all objections which they might have urged to the sufficiency of the notice to take the depositions. We think the Circuit Court erred in rejecting the depositions of Reno and others, because the officer before whom they were taken, did not state in the precise place directed by the statute, that the witnesses were sworn. In the introductory part of the depositions, the officer states that the witnesses were sworn previous to their examination, as required by the statute, and in addition to that, at the foot of each deposition, is the signature of the witness, and an ordinary j urat signed by the officer, stating at what particular hour the witness was sworn and examined. The certificate at the foot of the depositions does not in express terms state that the witnesses were sworn, but the officer had already stated that fact twice, once in the caption to the depositions to which the closing certificate refers, and again in the jurat at the close of each deposition, where each witness signed his name. We cannot doubt that the depositions were taken strictly in conformity to the law, and the certificate we think is substantially sufficient. The statement that the witnesses were sworn at the proper time and place is under the official sanction of the officer, and although he has not followed the literal directions of the statute, as to the particular place or connection in which that statement is made, yet we think that is not sufficient to justify the conclusion that the depositions are not entitled to credence. This court has uniformly held, that where the substance of the statute has been complied with, the depositions should not be rejected, although the literal provisions of the law have been departed from. In the case of Ballance v. Underhill, 3 Scam., 453, a deposition was held to be admissible, although it was nowhere stated, that the witness was sworn before he gave his deposition, the Court holding that it would presume that the oath was administered at the proper time. In Hawks v. Lands, 3 Gilman, 227, the literal requirements of the statute were allowed to be more widely departed from, than in the case before us. The statute provides that in all cases, both where the interrogatories are sent out with a commission to take a foreign deposition, and where they are orally propounded in case of a domestic deposition, the officer taking the same, “ shall cause such interrogatories, together with the answers of the witnesses thereto, to be reduced to writing in the order in which they shall be proposed and answered, and signed by the witness.” In that case the deposition was of a non-resident witness, and the officer taking the deposition had not caused the interrogatories to be written down with the answers, but had merely referred to them as they were contained in the commission, and this departure from the statute was held not only proper but even commendable, as it saved expense and answered every beneficial purpose. The court could see by the reference, what question had been put to and answered by the witness, and that was as satisfactory as if they had been re-written in the deposition. So here, we can see that the witnesses were properly sworn, and at the proper time, and and when that is the case it would be altogether too technical to say that the -party should lose the benefit of théir evidence, because the officer did not certify that fact in the particular place directed by the statute. We think the Circuit Court erred in rejecting these depositions. Whether the testimony which is really immaterial to the merits of the case, should be rejected upon another trial, will depend upon the state of the issues at that time. Should the counts on which the immaterial issues are formed be dismissed, then the immaterial evidence must be rejected. As the plaintiff has the right to dismiss those counts without the leave of this, or the Circuit Court, it is unnecessary to make any order upon his application for leave to do so. The judgment of the Circuit Court is reversed, and the cause remanded, with leave to the defendants to plead to the merits of the first count of the declaration. Judgment reversed.